

**U.S. Department of Justice**

United States Attorney
District of Maryland
Northern Division

| | | |
|---|---|---|
| Rod J. Rosenstein<br>United States Attorney<br><br>James G. Warwick<br>Assistant United States Attorney | 36 South Charles Street<br>Fourth Floor<br>Baltimore, Maryland 21201 | DIRECT: 410-209-4860<br>MAIN: 410-209-4800<br>FAX: 410-962-3124<br>TTY/TDD: 410-962-4462<br><br>James.Warwick@usdoj.gov |

March 31, 2015

Gary E. Proctor, Esquire
8 East Mulberry Street
Baltimore, MD   20202

Re:   United States v. James Bowie
      Criminal No.  RDB-14-0186

Dear Mr. Proctor:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. The terms of the agreement are as follows:

### Offense of Conviction

1.  The Defendant agrees to plead guilty to Count Two of the Superseding Indictment now pending against him, which charges him with Conspiracy to Launder Money, in violation of 18 U.S.C. § 1956(h). The Defendant admits that he is, in fact, guilty of said offense and will so advise the Court.

### Elements of the Offense

2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Count Two:

a.  The defendant knowingly, unlawfully and intentionally became a member of a conspiracy with at least one other person;

b.  The purpose of the conspiracy was to launder proceeds of criminally derived property through monetary transactions in and affecting interstate commerce;

c.  The monetary transactions involving criminally derived property had a value greater than $10,000.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: twenty years, a fine of $250,000, followed by a term of supervised release of not more than three years.  In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.  This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

    5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1)

and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

6. (a) This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond reasonable doubt, and to the following applicable sentencing guidelines factors:

Beginning in 2009 and continuing through 2014, James Bowie, the Defendant herein, did conspire with Richard Byrd, Kimberly Reid, Jerome Castle and others to launder proceeds generated from the illegal sale of cocaine and marijuana, which constitute criminally derived property. The Defendant admits that he was aware that the monies laundered were proceeds of drug trafficking. The Defendant was a practicing attorney admitted to the Bar of the state of Texas, and in part utilized his training and skills as an attorney to facilitate, commit and conceal the illegal laundering of drug proceeds generated by the activities of the Richard Byrd drug organization. During the course of this conspiracy, the defendant laundered or facilitated the laundering of between $1,000,000 and $2,500,000 in drug proceeds.

In the course of these money laundering activities, the Defendant and his conspirators engaged in numerous monetary transactions greater than $10,000 which affected interstate commerce. Many of these transactions involved the deposit and withdrawal of monies generated from the sale of drugs into bank accounts maintained by the conspirators and others. Other monetary transactions involved the investment of drug proceeds in ongoing businesses, and the transfer of money to and for the benefit of Richard Byrd, who typically used fictitious identities such as Robert Smith to conceal his true identity.

The Defendant further admits that he and his conspirators conducted monetary transactions involving drug proceeds with LOC Marketing LLC, The Griffin Night Club, Fever Beverage, and other business entities. Approximately $265,000 was invested in the Griffin Night Club, approximately $500,000 was invested in Fever Beverage, approximately $300,000 was invested in a Florida hotel development deal, and over $1,000,000 in cash was deposited into the bank accounts of LOC Marketing LLC.

The Defendant also utilized a bank account in his name and in the name of his sister to facilitate the laundering of drug proceeds. Between 2009 and 2010 over $240,000 in cash deposits were made to this account, with approximately $178,000 of that amount deposited in Maryland and $155,000subsequently withdrawn in California, Arizona and Florida. This pattern is typical of drug proceeds being moved from consumer states such as Maryland to source of supply states to facilitate the purchase of additional drugs for distribution.

The aforementioned conduct constitutes the crime of conspiracy to launder money. The base offense level for the crime outlined above is eight (8) pursuant to Guideline Section 2S1.1(a)(2). In that the Defendant knew that the monies laundered were proceeds from the sale of narcotic drugs, a six (6) level increase in the offense level is required by Section 2S1.1(b)(1). Because the amounts laundered were more than $1,000,000 but less than $2,500,000, there is a further upward adjustment of sixteen (16) levels as per Section 2B1.1. An additional two (2) level

increase under Section 2S1.1 (b)(2)(B) is required in that the offense of conviction herein is for a violation of 18 U.S.C. § 1956. The total offense level is thirty-two (32).

(b) The United States does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. The net offense level is 29. The advisory guideline range of 29 at Criminal History Category I is 87-108 months. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

7. The Defendant is believed not to have any criminal history. **The Defendant is a practicing attorney admitted to the Bar of the state of Texas. The Defendant understands that, as a result of this conviction, he must notify the Texas Bar of the fact of his conviction and surrender his license to practice law.**

8. This Office and the Defendant agree that with respect to the calculation the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The Defendant may raise factors contained in 18 U.S.C. §3553(a) in mitigation of sentence.

## Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant and will recommend a sentence at some point within the applicable guideline range.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b)        The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed, including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

12. The Defendant agrees to forfeit to the United States all of his right, title, and interest in any and all money, property, or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including, but not limited to the properties and assets contained in the Criminal Forfeiture Count of the Superseding Indictment. The items and properties contained in the Criminal Forfeiture Count are incorporated by reference herein.

13. The Defendant agrees to assist fully the United States in the forfeiture of the items and properties contained in the Criminal Forfeiture Count. The Defendant agrees to take all steps necessary to pass to the United States clear title to these assets, including but not limited to executing any and all documents necessary to transfer his interest in any of the above property to the United States, assisting in bringing any assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that he will not assist a third party in asserting a claim to the foregoing assets in an ancillary proceeding.

14. The Defendant knowingly waives all constitutional, legal and equitable defenses to the items and properties contained in the Criminal Forfeiture Count. It is further understood that, in the event that the United States files a civil action pursuant to [18 U.S.C. §

981/21 U.S.C. § 881] or any law enforcement agency initiates a forfeiture proceeding seeking to forfeit these assets, the Defendant will not file a claim with the Court or agency or otherwise contest such a forfeiture action and will not assist a third party in asserting any such claim. It is further understood that the Defendant will not file or assist anyone in filing a petition for remission or mitigation with the Department of Justice concerning the forfeited assets.

      15. The Defendant agrees to identify all other assets and identify the sources of income used to obtain all other assets, including identifying all assets derived from or acquired as a result of, or used to facilitate the commission of, any crime charged in the Indictment. These properties include assets and items and properties contained in the Criminal Forfeiture Count, titled in names other than the Defendant's. The United States reserves the right to proceed against any remaining assets not identified in this agreement, including any property in which the Defendant has any interest or control. The Defendant understands that a failure to comply with the requirements of Paragraphs 12 through 15 may also constitute obstruction of justice, for which an enhanced sentence may be imposed by the Court. See United States v. Dufresne, _____ F.3d __, 2012 WL 5258785 (8th Cir. Oct. 25, 2012).

### Obstruction or Other Violations of Law

      16. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

      17. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office

nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

18.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
James G. Warwick
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_5-12-15_  
Date

_James Bowie_ (signature)  
James Bowie

I am Mr. Bowie's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_5-12-15_  
Date

_(signature)_  
Gary E. Proctor, Esq.

9